**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BARRY WINGARD, | Civil Division |
| Plaintiff, | No. 15-1613 |
| v. | Judge Kearney |
| ALLEGHENY COUNTY, Pennsylvania, | |
| Defendant. | JURY TRIAL DEMANDED |

**PLAINTIFF'S PRETRIAL MEMORANDUM**

Plaintiff, Barry Wingard, by undersigned Counsel, files this Pretrial Memorandum as follows:

**I. STIPULATIONS**

None.

**II. DEPOSITION TESTIMONY**

Testimony of Elliott Howsie taken in the Arbitration between Barry Wingard and County of Allegheny, Pennsylvania on January 27, 2017

Page 431, Line, 5-24

**III. WITNESSES  -  LIABILITY**

**A.     Plaintiff Will Call**

1.     Barry Wingard
       3117 Westchester Drive
       Pittsburgh, PA 15238
       412-401-0027

Offer of Proof: Mr. Wingard's testimony will include: his contact and communications with Defendant concerning his attempt to return to his position in 2013, as well as, his eventual return in 2014 contingent upon his retirement from military service. Mr. Wingard will also testify regarding Defendant's retaliatory actions of  demoting him to an Attorney Grade 4

position, not crediting him with the proper leave time and then docking his pay as a result.

2.	Jeffrey Cuttler
	Allegheny County
	Public Defender's Office
	542 Forbes Avenue
	Pittsburgh, PA 15219
	412-350-2400

	Offer of Proof: Mr. Cuttler's testimony will include: his conversations and correspondence with Mr. Wingard regarding Mr. Wingard's attempt to return to his position in 2013 and his eventual return in 2014.

3.	Elliot Howsie
	Allegheny County
	Public Defender's Office
	542 Forbes Avenue
	Pittsburgh, PA 15219
	412-350-2400

	Offer of Proof: Mr. Howsie's testimony will include: the demotion of Mr. Wingard to an Attorney Grade 4 position including that he should not have been given the increase due to absence from the office because of his military service.

4.	Shanicka Kennedy
	United States Attorney's Office
	700 Grant Street
	Pittsburgh, PA
	412-644-3500

	Offer of Proof: Ms. Kennedy's testimony will include: conversation and correspondence with Mr. Wingard regarding his return to the office in 2014 and the docking of his pay due to supposed incorrect available leave time.

5.      Jake Lifson
        Allegheny County
        Law Department
        445 Fort Pitt Boulevard
        Pittsburgh, PA 15219
        412-350-1120

Offer of Proof: Mr. Lifson testimony will include: his conversations and correspondence with Mr. Wingard regarding Mr. Wingard's return to work in 2014 including the requirement that he retire from the military prior to his return. He will also testify to his knowledge of USERRA and the advise he gave regarding the handling of Mr. Wingard's return, including his salary and benefits. Mr. Lifson also will testify to his consideration of Mr. Wingard's lawsuit in determining to demote Wingard from a Grade 3 to a Grade 4, and to seek recoupment of salary.

**B.      Plaintiff May Call**

6.      Patrick Sweeney
        Allegheny County
        Public Defender's Office
        542 Forbes Avenue
        Pittsburgh, PA 15219
        412-350-2400

Offer of Proof: Mr. Sweeney's testimony will include: his knowledge as a union representative that upon Mr. Wingard's return from miliary service that he should be placed as an Attorney Grade 3.

7.      Sean Link
        Allegheny County
        Public Defender's Office
        542 Forbes Avenue
        Pittsburgh, PA 15219
        412-350-2400

Offer of Proof: Mr. Link's testimony will include: his knowledge as a union

representative that upon Mr. Wingard's return from miliary service that he should be placed as an Attorney Grade 3.

## VI. WITNESSES - DAMAGES

**A.    Plaintiff Will Call**

1.    Barry Wingard
3117 Westchester Drive
Pittsburgh, PA 15238
412-401-0027

Offer of Proof: Mr. Wingard's testimony will include: economic and non-economic damages sustained, including lost wages, retirement benefits, sick and vacation time, as well as, the humiliation and inconvenience he sustained because of Defendant's actions.

**B.    Plaintiff May Call**

2.    Jami Wingard
3117 Westchester Drive
Pittsburgh, PA 15238
412-401-0027

Offer of Proof: Ms. Wingard's testimony will include: economic and non-economic damages her husband sustained because of Defendant's actions.

## V. EXHIBITS

**A.    Plaintiff Expects to Offer**

1.    7/21/08 Personnel Action Authorization re: military leave (AC-BW_000603)

2.    10/26/12-9/29/13 Military Order (AC-BW_000597-602)

3.    1/31/13 Email E. Howsie to J. Doctor re: FW: Military Leave (Wingard and Hill) (AC-BW_001415)

4.    2/6/13 Email R. Zelinsky to R. Petrisko re: CC Kronos - Military Configuration Change (AC-BW_001416-1417)

5.     2/6/13 Email from R. Zelinsky re: CC Kronos - Military Configuration Change (AC-BW_001418-1419)

6.     8/7/13 Email J. Lifson to J. Doctor re: Wingard (AC-BW_001840)

7.     8/8/13 Email J. Cuttler to J. Lifson; J. Doctor re: Wingard (AC-BW_001838-1839)

8.     8/9/13 Emails J. Cuttler to B. Wingard re: your current address with Reply (AC-BW_000845)

9.     8/9/13 Emails between J. Cuttler and S. Kennedy (AC-BW_001832-1834)

10.    8/9/13 Letter J. Cuttler to B. Wingard re: return to work (BW_000001)

11.    8/16/13 Authorization for Release of Information re: B. Wingard (AC-BW_000609)

12.    8/29/13 Email J. Cuttler to E. Howsie; S. Kennedy re: call from Wingard (AC-BW_000846)

13.    9/3/13 Letter B. Wingard to J. Cuttler re: intent to return to (BW_000002)

14.    Letter J. Cuttler to B. Wingard re: expected return (BW_000003)

15.    9/9/13 Email J. Lifson to R. Petrisko; N. Nagle re: USERRA (AC-BW_001423)

16.    9/10/13 Email N. Nagle to R. Petrisko re: USERRA (AC-BW_001422)

17.    9/10/13 Email N. Nagle to W. Graham re: USERRA (AC-BW_001420)

18.    9/23/13 Facsimile S. Boyd to J. Cuttler re: Barry Wingard (AC-BW_000607-608, 610-611)

19.    10/8/13 Email J. Cuttler to E. Howsie; S. Kennedy re: Barry Wingard (AC-BW_000849)

20.    12/30/13 Retirement Board Yearly Contributions Summary re: B. Wingard (BW_000284)

21.    1/3/14 Email S. Steiner to S. Kennedy re: Wingard (AC-BW_001877)

22.    2/26/14 Agreement Contract between Alkandari Family and the attorney Barry Wingard (AC-BW_000613)

23.    9/04/14 Certificate of Release or Discharge from Active Duty (BW_000291-292)

24.     9/29/14 Email S. Kennedy to E. Howsie re: FW: Wingard (AC-BW_001874-1875)

25.     9/29/14 Email J. Lifson to E. Howsie re: Wingard (AC-BW_001868-1869)

26.     9/29/14 Email J. Lifson to W. McKain re: Wingard (AC-BW_001864)

27.     9/29/14 Email W. McKain to T. Conroy re: Wingard (AC-BW_001863)

28.     10/1/14 Email S. Kennedy to J. Lifson re: Wingard (AC-BW_001862)

29.     10/8/14 Email J. Lifson to B. Wingard re: PD's office (BW_000004-5)

30.     10/9/14 Email J. Cuttler to S. Kennedy re: Barry Wingard (AC-BW_002000)

31.     10/9/14 Email S. Kennedy to J. Lifson re: Document - Oct 9, 2014 (AC-BW_001987) with DD214 (AC-BW_000285-286)

32.     10/29/14 Email E. Howsie to J. Cuttler re: Wingard salary (AC-BW_002002)

33.     10/29/14 Email R. Petrisko to J. Lifson re: wingard (AC-BW_001858)

34.     10/30/14 Email S. Kennedy to J. Lifson re; Wingard (AC-BW_001856)

35.     10/30/14 Letter S. Kennedy to B. Wingard re: report for work (AC-BW_000851)

36.     10/31/14 Certificate of Retirement re: B. Wingard (BW_000014)

37.     11/3/14 Personnel Action Authorization Report - Return from Leave re: B. Wingard (AC-BW_000002)

38.     11/4/14 Email J. Cuttler to R. Petrisko re: FW: wingard (AC-BW_001851)

39.     11/4/14 Email S. Kennedy to B. Wingard re: return to work (BW_000006-7)

40.     11/4/14 Email S. Kennedy to J. Cuttler; J. Holloway re: FW: return to work (AC-BW_000853-854)

41.     11/4/14-11/5/14  Emails between S. Kennedy and J. Lifson re: wingard (AC-BW_001848-1849)

42.     12/12/14 Emails between R. Petrisko; S. Kennedy; J. Cuttler; J. Holloway; E. Howsie re: Barry Wingard - benefit time (AC-BW_000874-878)

43.     10/20/15 Attendance Records re: B. Wingard (AC-BW_001264)

44.     10/21/15 Email S. Kennedy to R. Petrisko; J. Lifson re: Barry Wingard - benefit time (AC-BW001234-1239)

45.     12/8/14-10/23/15 Emails between J. Cuttler; J. Holloway; S. Kennedy; R. Petrisko; L. Zaspel re: Barry Wingard - benefit time (AC_BW_000952-960)

46.     10/26/15 Emails between L. Zapel and W. Graham re: wingard (AC-BW_001780-1781)

47.     10/26/15 Email J. Lifson to S. Kennedy re: Wingard (BW_000008-9)

48.     10/28/15 Email S. Kennedy to B. Wingard re: Barry Wingard: requesting days 11/16 thru 11/20 (BW_000010)

49.     10/28/15 Letter S. Kennedy to B. Wingard re: 2015 sick and vacation time usage (BW_000011)

50.     11/2/15 Emails between R. Petrisko; C. Carragher; S. Kennedy; J. Cuttler re: Barry Wingard pay deduction (AC-BW_001266-1268)

51.     12/10/15 Email R. Petrisko to L. Zaspel; J. Lifson; F. Liebenguth; N. Nagle; W. Graham (AC-BW_002034)

52.     1/11/16 Email J. Lifson to V. Scott re: FW: Barry Wingard (AC-BW 1688-1691)

53.     1/29/16 Email J. Lifson to W. McKain re: Fwd: Wingard (AC-BW_001755-1756)

54.     2/4/16 Email M. Woodfork to J. Lifson re: WINGARD (AC-BW_001752)

55.     2/4/16 Email R. Petrisko to J. Lifson re: wingard (AC-BW_001751)

56.     2/5/16 Email R. Petrisko to T. Bossong re: Barry Wingard (AC-BW_001887-1890)

57.     2/12/16 Email J. Lifson to L. Zaspel re: Wingard (AC-BW_001750)

58.     3/8/16 Email E. Howsie to V. Scott re: Wingard (AC-BW_002019)

59.     3/15/16 Email J. Lifson to W. McKain re: Wingard (AC-BW_001740-1741)

60.     3/15/16 Email J. Lifson to L. Zaspel re: Wingard (AC-BW_001739)

61.     3/15/16 Email V. Scott to J. Lifson re: wingard (AC-BW_002010)

62.     3/16/16 Email R. Petrisko to L. Zaspel re: wingard (AC-BW_002009)

63.    3/16/16 Email L. Zaspel to R. Petrisko re: wingard (AC-BW_002008)

64.    3/16/16 Email R. Petrisko to J. Lifson re: wingard (AC-BW_002007)

65.    3/16/16 Email J. Lifson to L. Zaspel re: Wingard (AC-BW_001734)

66.    3/17/16 Email R. Petrisko to J. Lifson re: FW: Wingard time records (AC-BW_000861-872)

67.    3/18/16 Email R. Petrisko to J. Lifson re: FW: Wingard time records (AC-BW_001949)

68.    5/6/15 Email J. Lifson to R. User re: USERRA (AC-BW_001441)

69.    5/6/15 Email J. Lifson to R. User re: USERRA with Reply (AC-BW_001442)

70.    5/6/15 Emails between J. Lifson and R. User re: USERRA (AC-BW_001439-1440)

71.    8/11/15 Email J. Lifson to J. Love re: USERRA with 8/17/15 Reply (AC-BW_001437)

72.    9/21/15 Email D. Correa to J. Lifson re: USERRA (AC-BW_001436)

73.    12/4/15 Email J. Lifson to E. Howsie re: USERRA (AC-BW_001435)

74.    2013-2014 Excerpts from Plaintiff's cell phone records (BW_000441-000838)

75.    Allegheny County Records of Deeds Page re: B. Wingard (BW_001343)

76.    2014-2017 Paystubs for Barry Wingard (BW_000058-95, BW_001344-1374)

77.    12/31/06 Interest Arbitration Award 2007-2010 Agreement (AC-BW_000078-143)

78.    2011-2014 Collective Bargaining Agreement (AC-BW_004015-4060)

79.    2012 Arbitration Award Attorney Salary Table (BW_000027)

80.    2015-2018 Interest Arbitration Award (AC-BW_004061-004071)

81.    Arbitration Supplemental Award (BW_000163-166)

82.    Union Position Regarding Appropriate Salary Placement Adjustments for Assistant Pubic Defenders and Forensic Scientists (BW_000178-188)

83.    51 Pa.C.S.A.§ 4102

84. 1/1/08 Employee Handbook (AC-BW_000198-246)

85. Retirement Board of Allegheny County Creditable Service Detail Reports re: B. Wingard (BW_000025)

86. Retirement Quotation re: B. Wingard (BW_000028)

87. 12/2/15 Email E. Howsie to S. Pilarski re: Adam Hill (AC-BW_001316)

88. 1/11/16 Emails between T. Bossong; J. Cuttler; R. Petrisko; W. Seigel; E. Howsie; T. Jenkins re: Barry Wingard attorney steps (AC-BW_001670-1672)

89. Military Leaves as of 12/7/12 (AC-BW_001447)

90. 9/24/15 Email J. Cuttler to ServicesDesk re: Wingard clock in (AC-BW_001357)

91. 9/25/15 Emails between J. Cuttler; E. Howsie; S. Kennedy re: Wingard clock in information (AC-BW_001358)

92. 1/23/14 Emails S. Piper to J. Cuttler; S. Kennedy re: 903 increase with Reply from J. Cuttler (AC-BW_001700)

93. 1/23/14 Employee Master Job Step Update (AC-BW_001482-1488)

94. 2015 Annual Increase (AC-BW_001648-1650)

95. 10/30/14 Personnel Action Authorization re: return from leave (AC-BW_000879)

96. 1/11/16 Emails between T. Bossong; J. Cuttler; R. Petrisko; W. Seigel; J. Rieber; E. Howsie; T. Jenkins; J. Lifson re: Barry Wingard (AC-BW_001450-1452)

97. 2016 Annual Increase (AC-BW_001651-1653)

98. 11/3/14-11/4/14 Emails between R. Petrisko; J. Cuttler; J. Holloway; S. Kennedy re: wingard's return (AC-BW_001850)

99. 12/12/14 Emails between T. Johnson; J. Cuttler; S. Kennedy re: Barry Wingard (AC-BW_001990-1991)

100. 12/8/14 Email J. Cuttler to J. Holloway re: benefit time (AC-BW_001295)

101. 1/12/16 Email J. Cuttler to B. Wingard re: printout of days accumulated as of 2016 (BW_000017)

102. Wingard Attendance 2015 (AC-BW_003911)

103. 10/18/15-10/31/15 County Time Edit Attendance Records (AC-BW_001076)

104. 7/10/15 Email J. Cuttler to A. Cleary re: Wingard did not clock in (AC-BW_001355)

105. 2/16/16 Email R. Hudock to J. Cuttler re: Wingard clock in (AC-BW_001354)

106. 9/24/15 Email J. Cuttler to E. Howsie; S. Kennedy re: Wingard clock in (AC-BW_001356)

107. 11/12/15 Email J. Cuttler to S. Pilarski; E. Howsie; S. Kennedy re: FW: Longevity Bonuses for 2015 with attachment (AC-BW_001595-1598)

108. 2014 Salary Information re: B. Wingard (AC-BW_003886-3891)

109. 2013 Salary Information including Longevity Bonus re: B. Wingard (AC-BW_003866-3870)

110. 903 Longevity Bonus (AC-BW_001626-1629)

111. 2003-2006 Collective Bargaining Agreement (AC-BW_001533-1582)

112. 1/15/04 PAA re: B. Wingard (AC-BW_000671)

113. 3/8/06 PAA re: B. Wingard (AC-BW_000009)

114. 7/11/08 Employee Leave/Comp Form (AC-BW_000686)

115. Plaintiff's First Interrogatories and Request for Production of Documents to Defendant including any and all responses

**B.  Plaintiff May Offer**

Deposition Transcripts including exhibits for the following:
Jeffrey Cuttler taken July 27, 2016
Elliot Howsie taken July 27, 2016
Shanicka Kennedy taken February 22, 2017
Jake Lifson taken February 22, 2017

Testimony taken in the Arbitration between Barry Wingard and County of Allegheny, Pennsylvania on October 16, 2016 and January 27, 2017 (BW 839-1342)

## VI. NARRATIVE STATEMENT

Barry D. Wingard has worked as an attorney for the Allegheny County Office of Public Defender since April 30, 2001. During the same period, Wingard also has continuously served his country as a member of a reserve component of the U.S. Armed Frces. He began his military service in 1984 as an Army infantry private with the 101st Airborne Division, and rose through the ranks to become an Army Infantry officer, and finally a Lt. Colonel in the U.S. Air Force and Air National Guard. Upon commission, Wingard served as an Infantry officer, but later, after attending law school, served as an attorney in the Judge Advocate General ("JAG") branch of the Air Force, and Air National Guard.

Although a reservist, following the terrorist attacks of September 11, 2001, he often was called to active duty to support the ongoing "war against terrorism" and served several tours of duty in the Middle East.

Wingard was a member of the Air National Guard when ordered to active duty in July 2008 with the U.S. Air Force. That military deployment spanned a period through September 29, 2013. Because of the national emergency declared by the President and Congress, pursuant to 10 U.S.C. §12301(D), Lt. Col. Wingard's deployment orders expressly exempted him from the 5 year cumulative service limitation of 38 U.S.C. §4312(c)(4)(B). As such, the re-employment and benefit rights under USERRA were not affected by the length of Lt.Col. Wingard's deployment.

During his deployment, Lt. Col. Wingard prosecuted anti-terrorism cases and also served as defense counsel for a number of detainees imprisoned at the Guantanamo Bay facility. Because of his crucial service in this assignment, the Air Force extended his deployment a number of times.

On March 19, 2012, a new Public Defender, Elliott Howsie, was appointed. Howsie had

not worked with Lt. Col. Wingard before Wingard's deployment. Apparently Howsie had an issue with Lt. Col. Wingard's lengthy absence. In early August, 2013, while Wingard was still serving on active duty, Jeff Cuttler, Office Manager of the Office of Public Defender, wrote and informed Wingard that if he did not advise the Office of his intention to return to work within 30 days, ***his employment "will be terminated***." (August 9, 2013 letter, Plaintiff Ex. 10). The August. 9 letter was written for Cuttler's signature by Jake Lifson, an attorney with Defendant's solicitor's office. The language was first circulated to Howsie, as well as his Chief Deputy Shanicka Kennedy. The Lifson/Cuttler letter contended that because Wingard's deployment exceeded 5 years, his entitlement to re-employment rights under USERRA ended July 14, 2013.

Assistant Solicitor Lifson claims he "does not recall" why he ignored the 5 year exception, and is unable to explain the legal basis for placing a 30 day limitation on Wingard's declaration of intention to return to work while Wingard was still serving on active duty.[1]

In response to the Lifson/Cuttler letter, Lt. Col. Wingard called Cuttler later in August 2013, and advised that he believed he would be returning to the office later in 2013, or in early 2014. (Cuttler Aug. 29, 2013 email, Plaintiff Ex. 12). Because he was at that time in Cuba, Wingard also followed up this telephone call with a letter affirming his intention to return to the Public Defender's Office.

---

[1]Wingard had no such notification obligation. A service member on active duty during the time of war is not required to predict when or even if he will return to the job after completion of service. One of the basic purposes of the USERRA re-employment law is to maintain the service member's civilian job as an "unburned bridge." Not until the individual's discharge or release from the service, which triggers the application time, does the service member have to decide whether to re-cross that bridge. He is not properly pressed for a decision before, or even immediately upon his discharge but has the opportunity to make plans for the future and readjust himself to civilian life. 20 C.F R, §1002.88; *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284 (1946).

Despite the requirement of 20 C.F.R. §1002.88, Defendant continued to press Wingard for a specific date, even while Wingard was on active duty and continued to serve based on the needs of the Air Force. His tour of duty could be extended at any time by high authority, and Wingard had no realistic control over when he would be released from active duty.

However, once Wingard was released from active duty in late September 2013, he informed Cuttler that he was immediately available to return and was requesting re-employment.

Defendant ignored this re-employment request. After several weeks, Wingard telephoned Cuttler in mid-December and informed Cuttler that he would appear for work in late December 2013. On December 30, 2013, Wingard appeared at the Office of Public Defender and informed Cuttler that he was there to begin work. That same day, Wingard stopped at the office of the Allegheny County retirement board and printed a summary of his retirement benefits.

Upon arrival at the Public Defender's Office, Wingard questioned Cuttler on why he had not been re-employed. In response, Cuttler said he would talk to Howsie. Cuttler informed Wingard that there was no current opening for a trial attorney. Cuttler informed Wingard that he had been gone so long that Allegheny County had filed his spot and that Wingard had to understand this fact. Thus, Cuttler said, before Wingard could be re-employed, Cuttler would need to talk to Howsie and figure a way to re-employ him.

Defendant made no apparent attempt to contact Wingard after this late December 2013 meeting, until September 2014.

After waiting nearly a year to be offered re-employment, and hearing nothing, in September 2014 Wingard again physically went to Cuttler's office and demanded reinstatement.

Shortly after meeting with Cuttler, Wingard saw Howsie, the Director, in the hall outside

his office and questioned him about when reinstatement would occur.

In response, Howsie reiterated what Assistant Solicitor Lifson had told Wingard a year earlier. Howsie told Wingard that because he had been deployed for more than 5 years, Defendant had no obligation to re-employment him. Howsie said**:** "Look, you have been gone longer than the five years and we will let the legal department decide if I have to rehire you or not."

Again, Defendant did not re-employ Wingard, or even contact him until nearly a month passed. Indeed, Defendant did not ever offer re-employment until Wingard provided evidence not only that he had been released from active duty, but also that he had formally retired from the Air Force, and had no further reserve obligation and thus would not be recalled to active duty in the future.

Even then, Defendant delayed and hampered Wingard's return to employment.

For example, in late October 2014, Shanicka Kennedy, the Chief Deputy Public Defender, left a telephone message for Wingard. Kennedy claims that her October 29 phone message informed Wingard he was to return to work on November 3, 2014.

However, no such message was left for Wingard. Indeed, Kennedy knew she had failed to leave such a message. In an email Kennedy created for the sole purpose of creating an untrue record, Kennedy on November 4 wrote the following:

> Briefly on September 29, 2014, you requested reemployment with the Office of Public Defender despite the fact that your military leave ended September 2013...on October 29, 2014, I left you a voicemail message requesting that you contact me to discuss you reporting to work on Monday, November 3, 2014. Since you did not return my phone call before Friday, October 31, 2014, I wrote you and requested that you report to work on Wednesday, November 5, 2014.

(Kennedy email to file, Nov. 4, 2014, Plaintiff Ex. 40)(emphasis added).

However, Kennedy's chronology in the Nov. 4 email is demonstratively false. Kennedy

actually wrote Wingard on October 30–a full day before he purportedly failed to "return [her] phone call before Friday, October 31, 2014." *See and compare*. Kennedy email to file, Nov. 4, 2014 (Plaintiff Ex. 40), with Kennedy Oct. 30, 2014 letter to Wingard. (Plaintiff Ex. 35); see also Kennedy to Lifson Oct. 30, 2014 email (Plaintiff Ex. 34).

Kennedy now claims there is an "incorrection" in the dates of the Nov. 4 email to Wingard's file, and admits she could not possibly have been correct when she claimed to have written Wingard on October 30, because he had not returned her phone call by October 31.

Finally, after a number of back and forth communications between Assistant Solicitor Lifson, Chief Deputy Kennedy, and Director Howsie, Wingard was reinstated on December 1, 2014.

### Grade 3 vs. Grade 4

While Wingard was serving his country on military deployment, and shortly after he applied for re-employment, a number of trial attorneys in the Public Defender Office were promoted from Trial Attorney, Grade 4 to Trial Attorney Grade 3 effective January 1, 2014. Upon reinstatement in December 2014, Wingard was placed at the Grade 3 level.

However, shortly after he brought this action on December 8, 2015, Defendant claims to have discovered a "mistake," and demoted Wingard back to Grade 4. At the same time, it sought recoupment of what it claims was a mistake to move Wingard from a Grade 4 to a 3, and therefore demanded one year of allegedly overpaid wages.

In an email of January 11, 2016, Assistant Solicitor Lifson informed Defendant's trial counsel, Virginia Scott that (1) "Wingard has a claim against the county relating to his military leave;" (2) "[I]t appears that when [Wingard] returned from military service he was placed in the

wrong payment bracket, resulting in overpayment" and (3) "The County wants to put him in the correct (lower) bracket and seek reimbursement." Lifson requested Scott's view on whether demoting Wingard, lowering his salary, and seeking recoupment of the alleged overpayment would be "unduly problematic for the lawsuit."

Lifson informed Wingard of the demotion and plans for recoupment in March 2016. During a meeting with Wingard's union representation, Lifson first attributed the mistake to a computer error; then claimed it was a human error, then contended Defendant made a mistake and thought Wingard was someone else.

Irrespective of what excuse Defendant now has conjured, under USERRA, Defendant must reinstate Wingard to a position which, at the time offered, reflects with reasonable certainty, the pay, benefits, seniority and other job prerequisites that he would have attained if not for the period of military service. Defendant all but admits that but for Wingard's military service, he would have been promoted to Grade 3.

According to Director Howsie, Wingard's military service was the but-for cause of Defendant's purported failure to promote him:

> "Given the fact that Barry Wingard was not in the office at the time of the [promotions] **_due to his military leave_**, he was not given a step and grade increase by the arbitrator.

(Howsie Jan. 27, 2017 Arbitration Testimony at pg. 431); *See also* Howsie to Cuttler email of Jan. 11, 2016 (Plaintiff Ex. 52)(same).

## VII. EXPERT REPORTS

None.

## VIII. SPECIAL DAMAGES

Plaintiff's employment with Defendant began April 30, 2001. Plaintiff's last active duty military assignment ran from July 11, 2008 until September 29, 2013. If Plaintiff had not been absent from his employment with Defendant due to his military service, his salary would have continued as follows:

Public Defender 4

| | | |
|---|---|---|
| 2008 - $22.085 ($45,936.02) | Step 7 |
| 2009 - $22.932 ($47,669.07) | Step 8 |
| 2010 - $23.782 ($49,467.53) | Step 9 |
| 2011 - $24.698 ($51,372.52) | Step 10 |
| 2012 - $25.439 ($52,913.70) | Step 11 |
| 2013 - $26.202 ($54,501.11) | Step 12 |

Public Defender 3 [2]

| | | |
|---|---|---|
| 2014 - $30.405 ($63,244.30) | Step 13 |
| 2015 - $31.318 ($65,141.63) | Step 14 |
| 2016 - $32,258 ($67,095.88) | Step 15 |
| 2017 - $33.225 ($69,108.75) | Step 16 |

See documentation attached hereto as Exhibit "A".

## BACKPAY DAMAGES

1.  Plaintiff is entitled to paid military leave for 15 days in any year ordered to active duty.[3] Plaintiff used 6 of his military days or 48 hours during 2008. He was not given credit for any military leave time for his remaining years of active duty.

    8 hours x 15 days = 120 hours

    | | |
    |---|---|
    | 2008 - $22.085 | $1,590.12 |
    | 2009 - $22.932 | $2,751.84 |
    | 2010 - $23.782 | $2,853.84 |
    | 2011 - $24.698 | $2,963.76 |
    | 2012 - $25.439 | $3,052.68 |
    | 2013 - $26.202 | $3,144.24 |

    **$16,356.48**

---

[2] Assistant Public Defenders were promoted from Grade 4 to Grade 3, with their appropriate Step level, on January 1, 2014.

[3] *See* 51 Pa.C.S.A. § 4102 (a)(ii).

See documentation attached hereto as Exhibit "B" and Exhibit "C".

2.    Plaintiff's last military day was September 29, 2013. Therefore, he should have been re-employed by October 15, 2013.[4] Plaintiff found alternative employment as of March 1, 2014 after Defendant refused to re-employ him.[5]

October 15, 2013 - December 31, 2013 (11 weeks@$26.202 hourly) = $11,528.88
January 1, 2014 - March 1, 2014 (8 weeks@$30.405) = $9,729.60

**$21,258.48**

3.    Plaintiff was allowed to return to work with Defendant on December 1, 2014. He was initially and correctly paid as a Public Defender 3, Step 13 at the rate of $30.405 ($63,244.30). However, Plaintiff was not moved to a Step 14 as of January 1, 2015.[6] His correct salary should have been $31.318 ($65,141.63). Therefore, he sustained a loss of $1,897.33 for 2015.

**$1,897.33**

See documentation attached hereto as Exhibit "D".

4.    Plaintiff continued to receive incorrect pay as a Public Defender 3, Step 13 until March 5, 2016. Plaintiff should have been paid as Public Defender, Step 15 from January 1, 2016. The difference is $1.853 hourly. Therefore, Plaintiff sustained a loss of $667.08.

1/1/16-3/6/16 (9 weeks - 360 hours@$1.853)

**$667.08**

See documentation attached hereto as Exhibit "E".

**RETALIATION DAMAGES**

5.    Beginning March 6, 2016, Defendant demoted Plaintiff to Public Defender 4, Step 14 at a salary of $57,820.23.The hourly difference between Public Defender 3, Step 15 and Public

---

[4]Under 20 C.F.R. § 1002.181, "Absent unusual circumstances, re-employment must occur within two weeks of the employee's application for re-employment."

[5] *See* Plaintiff's Answers to Defendant's First Interrogatories and Request for Production of Documents, No. 3.

[6]Collective Bargaining Agreement, Article VII, Section 5 provides all advances to the next step in the salary schedule shall occur on January 1 of each year.

Defender 4, Step 14 is $4.46 for 2 weeks or 80 hours. Therefore, Plaintiff sustained a loss of $256.80.

**$256.80**

See documentation attached hereto as Exhibit "E".

Defendant then moved Plaintiff to Public Defender 4, Step 15 at a salary of $59,554.83. The hourly difference between Public Defender 3, Step 15 and Public Defender 4, Step 15 is $3.626. Therefore, Plaintiff sustained a loss of $5,946.54.

3/20/16-12/31/16 (41 weeks - 1640 hours @ $3.626)

| Public Defender 3, Step 15 | Public Defender 4, Step 14 |
|---|---|
| 2016 - $32.258 ($67,095.88) | 2016 - $27.798 ($57,820.23) |
| | Public Defender 4, Step 15 |
| | 2016 - $28.632 ($59,554.83) |

**$5,946.54**

See documentation attached hereto as Exhibit "F".

Plaintiff was paid as a Public Defender 4, Step 16 instead of a Public Defender 3, Step 16 for 2017. The pay difference for a Public Defender, Step 16 and a Public Defender 4, Step 16 is $3.734. Therefore, Plaintiff sustained a loss of $3.435.28 through the date of trial.

1/1/17-6/13/17 (23 weeks or 920 hours @$3.734)

| Public Defender 3, Step 16 | Public Defender 4, Step 16 |
|---|---|
| 2017 - $33.225 ($69,108.75) | 2017 - $29.491 ($61,341.68) |

**$3,435.28**

See documentation attached hereto as Exhibit "G".

## VACATION, SICK TIME AND PERSONAL DAYS

6.    Sick leave is an accumulated benefit earned through service. Therefore, Plaintiff is entitled to sick leave benefits for the years he was on active duty service. Additionally, Defendant refused to re-employ Plaintiff in 2013 or 2014 and therefore, he was also denied the benefit for those years. Defendant allows an employee to accumulate up to 120 days. At the time

Plaintiff took military leave in 2008, he had accumulated 50 sick days. [7]

2008 - 50 days
2009 - 10 days
2010 - 10 days
2011 - 10 days
2012 - 10 days
2013 - 10 days
2014 - 10 days

110 days or 880 hours @ $33.225 (Public Defender 3, Step 16)

**$23,124.60**

See documentation attached hereto as Exhibit "H".

Defendant also contends that Plaintiff was overpaid for vacation and sick time in 2015. Therefore, it has deducted $2,432.46 from his reduced pay. Defendant refused to re-employ Plaintiff during 2013-2014. Therefore, if Plaintiff has been employed during that time period, he would have accumulated 15 vacation days for use during 2015. Instead, Plaintiff was docked for using 9 vacation days.

**$2,432.46**

See documentation attached hereto as Exhibit "I".

Plaintiff was entitled to 15 vacation days per year based on his years of service. Plaintiff would have been entitled to the following vacation time had he been returned to work on October 15, 2013.

October 15, 2013-December 31, 2013 (15 days prorated) (3 days)
January 1, 2014-December 31, 2014 (15 days - 8 days taken) (7 days)
January 1, 2015-December 31, 2015 (15 days - 9 days taken) (6 days)

**16 days**

## RETIREMENT CONTRIBUTION

7.      Plaintiff has not been given creditable service for his military service for purposes of retirement. Plaintiff should be given yearly credit of 2080 hours. Plaintiff will be

---

[7] Plaintiff requested to use 27 sick days in 2008, but the County did not to pay for those days. See Ex. "H". Additionally, documentation was not provided by Defendant regarding Plaintiff's sick leave usage in 2006, 2007 or 2008. Plaintiff will testify he had additional sick days and estimates the total amount to be approximately 25 days.

requesting the Court to issue an order regarding correcting his retirement contribution.

See documentation attached hereto as Exhibit "J".

## IX. UNUSUAL LEGAL ISSUES

None.

## X. TRIAL

Trial by jury, lasting approximately 2 days for the Plaintiff's case in chief.

## XI. PLAINTIFF'S EXHIBITS

Plaintiff hereby grants permission to counsel for Defendant to examine Plaintiff's trial exhibits at the offices of Samuel J. Cordes & Associates.

## XII. OPPOSING PARTY'S EXHIBITS

Plaintiff's counsel will indicate agreement or disagreement with the authenticity and admissibility of Defendant's exhibits once they are identified and Plaintiff's counsel has had an opportunity to examine them.

Respectfully submitted,

**Samuel J. Cordes & Associates**

 /S/ Samuel J. Cordes
Samuel J. Cordes
Laura C. Bunting
Pa. I.D. No. 54874 (Cordes)
Pa. I.D. No. 307274 (Bunting)

245 Fort Pitt Boulevard, 2nd Floor
Pittsburgh, PA 15222
(412) 281-7991

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2017, a copy of the foregoing *Plaintiff's Pretrial Memorandum* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/S/ Samuel J. Cordes
Samuel J. Cordes
Attorney for Plaintiff