IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARRY WINGARD, | Civil Division |
| Plaintiff, | No. 15-1613 |
| v. | Judge Kearney |
| ALLEGHENY COUNTY, Pennsylvania, | |
| Defendant. | JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S "MOTION IN LIMINE 2" [Doc. No. 69]**

**I. Introduction**

Defendant's Motion in Limine 2 [Doc. No. 69] seeks to preclude Wingard's claims for vacation, sick time and personal days. Defendant says those benefits are "non-seniority based." and USERRA provides returning service members with only seniority and seniority-based benefits they would have attained had they remained continuously employed. Motion at ¶¶2-5.

But Defendant's conclusions are just that; conclusions without any independent analysis of the meaning of a seniority based benefit.

To the extent this Court even needs to reach the merits of Defendant's Motion because of the significant procedural shortcomings,[1] Defendant's conclusory argument is simply wrong because it ignores the Supreme Court's analysis of the issue.

---

[1] Defendant failed to comply with Local Rule 16.1(c)(4). Moreover, Defendant's Motion is not a Motion in limine at all. Wingard incorporates by reference the arguments made in his Brief Opposing Defendant's Motion In Limine 1 [Doc. No. 73] as if fully restated and objects to this Motion 2 for the those same reasons.

1

A.     **Background**

The Collective Bargaining Agreement (CBA) at issue here awards annual vacation time between 5 days and 25 days depending on how long an employee has been employed. For example, an employee who has been employed by Allegheny County for 16 years, as Wingard has been is entitled to 20 days of vacation per year. (CBA Art. X, §1(B), pg 20 [Doc No. 69-1 at pg. 20]

As the CBA noted, "all..permanent employees actively employed on January 1 shall be entitled to paid vacation in that calendar year in accordance with [a prescribed schedule]" Id.

To be eligible for vacation an employee must received either "earnings," or "compensable disability" credited to 13 pay periods in the previous year. (CBA Art X, §2(A).

The CBA likewise provides Sick Leave on the same length of service basis. After the first year of service, employees are credited with 10 days of paid Sick Leave per year. CBA Art. XII, §2(A) pg. 23. [Doc. No. 69-1 at pg. 23].[2]

To be eligible for sick leave an employee must receive either "earnings" or "compensable disability" credited to 13 pay periods in the previous year. (CBA Art XII, §2(B).

Thus, Vacation and Sick Leave time accrue automatically as a function of continued association with Defendant. While true that an employee must have received "earnings," or "compensable disability" credited to 13 pay periods in the previous year to receive vacation time, once that requirement is met, vacation time accrues automatically as a simple function of how long an employee has been employed by the county.

---

[2] Defendant CBA precludes accrual of sick leave for employees on leave of absence. CBA Art. XII, §2(A). However that attempt is not enforceable to the extent it would limit Wingard's right under USERRA to all the seniority and seniority-based benefits that would have attained had he remained continuously employed. 38 U.S.C. §4316(a). USERRA supercedes any local law, ordinance, contract, agreement, policy, plan, practice or other matter that reduces, limits or eliminates in any manner any right or benefit provided by USERRA. 38 U.SC. §4302(b).

## II. Argument

A. **Defendant's Vacation and Sick Leave Are Seniority Based, Not Short-term Compensation for Work Performed**

The answer to the question Defendant alludes to but really doesn't analyze is whether its vacation and/or sick leave policy is seniority-based or just short term compensation for work performed.

In relevant part, USERRA specifies:

> A person who is re-employed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.

38 U.S.C. § 4316(a).

USERRA defines "seniority" as "longevity in employment together with any benefits of employment which accrue with, or are determined by, longevity in employment." 38 U.S.C. §4303(12).

In other words, USERRA requires employers to adhere to the "escalator" principle, placing a returning service member at the "precise point he would have occupied had he kept his position continuously" while away from the job for his military service. *Fishgold v. Sullivan Drydock Corp.,* 328 U.S. 275, 284–85(1946) (interpreting the Selective Training and Service Act of 1940's seniority provision); *Rogers v. City of San Antonio,* 392 F.3d 758, 763 (5th Cir.2004) (quoting *Fishgold* in the USERRA context).

Likewise, USERRA "supersedes any State law (including local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by" USERRA. 38 U.S.C. § 4302(b).

In *Accardi v. Pennsylvania R.R. Co.,* 383 U.S. 225 1966), the Supreme Court determined severance payments to be a seniority-based benefit to which a service members is entitled. *Id*. 383 U.S. at 232. Following honorable discharge from the armed forces, Accardi returned to his job at the Pennsylvania Railroad and was restored to his former positions with the same amount of seniority he had when he left, plus credit for the three years he spent in the armed forces. *Id.* at 227. Fifteen years later, however, he was laid off and, pursuant to his union agreement, awarded severance pay based on "the length of compensated service" with the railroad. *Id.* at 227–28. The railroad excluded the three years he spent in the armed forces. He sued, alleging violations of the Selective Training and Service Act of 1940, which required employers to reinstate honorably discharged employees to "their former position" or "a position of like seniority, status, and pay," without a loss of seniority. *Id.* at 229.

The statute's purpose, the Supreme Court said, was "to preserve for the returning veterans the rights and benefits which would have automatically accrued to them had they remained in private employment rather than responding to the call of their country." *Id.* at 229–230.

Although the severance payments were based primarily on the employees' length of service with the railroad, the railroad argued severance was "not based on seniority, but on the actual total service rendered by the employee." *Id.* at 230. The Supreme Court rejected that argument for two reasons. First, the Court noted, the railroad's rules afforded severance credit for an entire year to an employee who had worked less than an entire year, undercutting the railroad's argument that the

4

severance payments were compensation for services rendered. *Id.* Next, the Court said, "the real nature" of severance payments are compensation for loss of a job, not payment for services rendered. *Id.*

For those reasons, the Supreme Court concluded that severance payments are "a means of compensating employees for the loss of rights and benefits accumulated over a long period of service"—not, as the railroad had argued, a form of deferred compensation for work done in the past. *Foster v. Dravo Corp.,* 420 U.S. 92, 98 (1975) (describing *Accardi holding.*). Accordingly, the severance payments were a seniority-based benefit guaranteed by federal statute, the Court held. *Accardi,* 383 U.S. at 232.

By contrast, *Foster* involved the accrual of vacation benefits, which the Supreme Court deemed a form of short-term compensation for work performed, and thus not a benefit based on an employee's seniority to which a servicemember was entitled pursuant to the Military Selective Service Act. 420 U.S. at 100.

Foster's CBA required employees to work twenty-five weeks in a calendar year to accrue the company's full amount of allotted vacation time. *Id*. at 94 . Foster worked seven weeks in 1967, took military leave, and then returned for thirteen weeks in 1968. *Id*. When his employer denied him vacation days for both years, he sued, arguing that vacation days are a seniority-based benefit. The Supreme Court disagreed, highlighting the difference between the vacation benefits at issue and the severance payments addressed in *Accardi*.

Both included a work requirement, but unlike the work requirement in *Accardi* (which "appear[ed] plainly designed to measure time on the payroll rather than hours on the job"), the work

5

requirement to accrue vacation benefits "constitute[d] a bona fide effort to compensate for work actually performed." *Id.* at 99.

Critical to the Court's conclusion that "vacation benefits were [not] intended to accrue automatically as a function of continued association with the company" was the fact that employees ***accrued extra vacation time as they worked overtime hours,*** and that if an employee was laid off before hitting the 25–week mark, he was compensated for vacation days on a pro rata basis. *Id.* at 100–01. Thus, the Court held, the vacation benefits at issue were more appropriately characterized as "a form of short term compensation for work performed." *Id.* at 100,

A close reading of *Foster*, in light of a more recent Supreme court case *Alabama Power Co. v. Davis,* 431 U.S. 581(1977), compels a conclusion that Allegheny County's vacation and Sick Leave benefits are seniority based, and not compensation for work performed.

In *Alabama Power,* a re-employed service member sued after he was denied employer pension credit for the time he had spent on military leave. *Id.* 431 U.S. at 582,

Again the Supreme Court stressed the importance of identifying the "real nature" of the payments, noting that, in *Accardi,* the Court rejected an employer's attempt to "disguise" severance payments by "use of a 'compensated service' formula to calculate the amount of payments." *Id.* at 588.

The Court stressed there are "two axes of analysis" for determining whether a benefit is a right of seniority secured by a veteran:

> (1) whether the benefit would have accrued, with reasonable certainty, if the veteran had been continuously employed during his military service, and
> (2) whether the benefit at issue is a "perquisite of seniority"

*Id.*

Thus, in determining the vacation and Sick Leave issue here, under the test set forth in *Alabama Power*, the court must determine, first, whether it is reasonably likely that vacation and Sick Leave time would have accrued had Wingard not entered the service and second, whether Vacation or Sick Leave time are in the nature of a reward for length of service or if they are in the nature of short-term compensation for services rendered.

This analysis turns on the nature of the benefits, not the particular formula by which those benefits were calculated"—"[e]ven the most traditional kinds of seniority privileges could be as easily tied to a work requirement as to the more usual criterion of time as an employee," the Court said. *Id.* at 592.

First, here it is reasonably certain that vacation and Sick Leave time would have accrued had Wingard never left his position with Allegheny County upon deployment into the military. It is clear under the CBA that employees who are employed on January 1 "shall be entitled to paid vacation." (CBA, Art X, §1(B) [Doc. No. 69-1, at pg. 20). There is nothing to suggest that vacation or Sick Leave time does not automatically accrue.

In determining whether the vacation and Sick Leave pay is a reward for length of service or is short-term compensation the analysis here starts with *Forster*.

The Supreme Court held vacation pay in that case was a form of short-term compensation, not protected by the precurser of USERRA *if* the employee must complete some work requirement to receive vacation time. 420 U.S. at 99. (emphasis added).

However, "where it clearly appears that vacations and sick leave are intended to accrue automatically as a function of continued association with the company," then vacation benefits are

protected and the returning veteran is entitled to receive vacation pay as if he had been continuously employed. *Id*., at 101.

In *Foster*, an employee was required to work at least 25 weeks a year to receive any vacation time. Once an employee worked 25 weeks, he was then accorded the same amount of vacation time as one who worked a full year. Moreover, additional vacation credit was given to employees who worked substantial overtime.

While superficially Wingard's case appears similar, it is distinguishable from *Foster*, because here vacation accrues automatically as a function of continued association, and not as a requirement of work.

While true that an employee must have "received earnings" or "compensable disability" credited to 13 pay periods, to receive any vacation time, once that requirement is met, vacation time accrues automatically as a simple function of how long an employee has been employed by Defendant. [3]

There is no work performance requirement. First, the CBA does not reference work performance at all, but speaks in terms of "received earnings." Received earnings are not the same thing as work performance. As just one example, under Pennsylvania law, a public employee is entitled to 15 days a year of pay while he or she is on active duty. 51 Pa. Cons.Stat.Ann. §4102(a)(ii). Those are earnings, but by definition are not predicated on work performance.[4]

---

[3]For example, an employee who has been employed by Allegheny County for 15-20 years receives 20 days of vacation time, and one who has been there for 21 years receives 21 days of vacation. (CBA. Art. X, 1(B) [Doc. 69-1, at pg. 20]

[4]If a statute confers a benefit on employees taking military leave, USERRA protects the benefit. *See Pucilowski, v. Department of Justice*, 498 F.3d 1341, 1344 (Fed. Cir. 2007)*; United States v. Missouri*, 67 F. Supp.3d 1047, 1051 (W.D. Mo. 2014).

8

Moreover, to the extent that "received earnings" is unclear, the language of Defendant's CBA must be construed for the benefit of Wingard, who left private life to serve his country in its hour of great need. Both the plain language of USERRA as well as Congressional intent mandate reading the CBA in a light most favorable to Wingard, at least at the pre-trial "motion in limine" stage. *Alabama Power*, 431 U.S. at 584-85; *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946).

Likewise, the CBA specifically includes within the meaning of "received earnings" payments for compensable disability. Clearly a person who receives compensable disability payments is not performing work.[5] Unlike the *Foster* employee who was required to "work" for 25 weeks, to receive vacation, here employees only need to have "earnings" or "compensable disability"–neither of which necessarily translates into work. [6]

Second, Allegheny County's CBA provides no additional vacation time for overtime work, a factor *Foster* found to be significant to the analysis of whether a benefit is seniority-based or just short-term compensation for work performed.

In short, Defendant vacation and Sick Leave policies have no work requirement at all, and even if they do, that work requirement is so insubstantial that it precludes a finding that it measures

---

[5]Moreover, if Defendant provides vacation and sick leave credit for employees on disability leave of absence , the same benefits must be accorded to an employee who is on military leave. 38 U.S.C. §4316(b); 20 C.F.R. §1002.150(c); *See Paxton v. City of Montebello*, 712 F. Supp. 2d 1007, 1016 (C.D. Cal. 2010)(re-employed service members were entitled to accrue annual leave during military service because other employees on leave accrued annual leave) If Defendant now argues Wingard was denied vacation or sick leave benefits because his leave was different from an employee on compensable disability leave, Defendant has admitted it violated USERRA.

[6]For example, under the Fair Labor Standards Act employers must compensate their employees who work in excess of 40 hours per week at a rate one-and-one times the regular rate at which they are employed. The statute defines "regular hourly rate" to include all renumeration for employment paid to, or on behalf of the employee. In light of the statute's requirement things like longevity pay, must be included in the calculation, even though by definition longevity pay is "payment given on the basis of length of service." See *Featsent v. City of Youngstown*, 70 F.3d 900, 905-06 (6th Cir. 1995). In short, "earnings" do not equate to time worked, but, rather to "renumeration for employment." *Cf DeLee v. City of Plymouth, Inc.*, 773 F.3d 172, 181 & n. 4 (7th Cir. 2014)

actual performance of work. *Foster*, 420 U.S. at 99. *See also DeLee v. City of Plymouth, Inc.*, 773 F.3d 172, 181 (7th Cir. 2014)(finding longevity pay to be reward for lengthy service, rather than compensation for work performed, despite proration of longevity pay for employees taking leaves of absence).

In *Accardi*, for example, severance pay was found to be seniority-based benefit even thought the amount of such pay was based on the length of an employee's compensated service with an employer. A month of compensated service was defined as any month in which an employee worked at least one day, and a year of compensated service as 12 such months or a major portion thereof. In these circumstances, the Court held, severance payments were based primarily on the employee's length of service, with the employer and not work actually performed. Id., 383 U.S. at 230.

Likewise, the CBA spells out that seniority accumulates during absences due to illness, layoff or leave of absence. (CBA Art. VII, §1 [Doc. 69-1 at pg. 11].

In *Lapine v. Town of Wellesley*, 167 F. Supp.2d 132, 142-43 (D. Mass 2001), *aff'd* 304 F.3d 90 (1st Cir. 2002), the court held that vacation leave benefits were a reward for length of service because they automatically accrued after six month requirement was met. This was so because after the six month requirement was met, no further benefits were awarded regardless of how much the employee worked. Thus, the court held, vacation leave was a reward for length of service, not short-term compensation for work performed, and therefore Lapine was entitled to receive pay for vacation days he would have received had he been continuously employed by Wellesley. *Id.*, at 143.

This case is factually indistinguishable from *Lapine*. Because Defendant's vacations are based on length of service, Wingard, absence from work due to military service should be treated

as continuous employment in computing how much vacation time and Sick Leave are available and Defendant's Motion in Limine 2 should be denied.

Respectfully submitted,

**Samuel J. Cordes & Associates**

/S/ Samuel J. Cordes
Samuel J. Cordes
Pa. I.D. No. 54874

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 281-7991

Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify on this 27th day of April, 2017 I served a copy of ***Plaintiff's Brief in Opposition to Defendant's "Motion in Limine 2" [Doc. No. 69]*** via electronic mail upon the following:

Virginia Spencer Scott
Allegheny County Department of Law
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
vscott@alleghenycounty.us

/S/ Samuel J. Cordes
Samuel J. Cordes